IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CRAIG WAYNE JOHNSON, § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | CAUSE NO. A-20-CV-00385-JRN | |
| § | | |
| DAIMLER TRUCKS NORTH § | | |
| AMERICA, LLC, and MERITOR § | | |
| AFTERMARKET USA, LLC, § | | |
| *Defendants*. § | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Craig Wayne Johnson, files this First Amended Complaint against Daimler Trucks North America, LLC and Meritor Aftermarket USA, LLC as follows:

### I.   THE PARTIES

1. Plaintiff, Craig Wayne Johnson ("Johnson"), is an individual residing in Val Verde County, Texas who may be contacted by and through the undersigned counsel.

2. Defendant, Daimler Trucks North America LLC ("Daimler"), was served and appeared in Cause No. D-1-GN-20-001292, in the 345th Judicial District Court of Travis County, Texas, by and through its attorney Ryan C. Bueche. Removal to this Court was sought by Daimler.

3. Defendant, Meritor Aftermarket USA, LLC ("Meritor"), was served and appeared in Cause No. D-1-GN-20-001292, in the 345th Judicial District Court of Travis County, Texas, by and through its attorney Edward M. Slaughter.

### II.   JURISDICTION AND VENUE

4. The Court has jurisdiction over this action due to Defendants' timely removal pursuant to 28 U.S.C. § 1332.

5. Venue of this civil action is proper in this Court because a substantial part of the

events giving rise to the claims associated herein occurred in Travis County, Texas. More specifically, Johnson took delivery of and paid for the truck that is the subject of this lawsuit in Travis County.

### III.   FACTUAL BACKGROUND

6.      Johnson lives on a ranch between Del Rio and Ozona, Texas. The ranch is at the top of a hill. The road from the highway to access it is caliche and steep.[1] The grade is such that hauling heavy items to the ranch, such as Johnson's ranch equipment, cannot be accomplished without a heavy heavy-duty four-wheel drive truck. The ranch truck, a Ford F-450 with four-wheel drive and dual rear wheels, cannot get up the hill towing a single tractor on a trailer due to wheel spin.

7.      In or around 2014, Johnson began planning the construction of a new home on the ranch. The building pad requires crushed stone which Johnson planned on purchasing and transporting himself up his steep caliche road. In order to be able to haul his tractors and equipment to service facilities, and haul the crushed stone up the hill, Johnson began searching for a suitable truck. Johnson's research indicated the truck best suited to his needs was the Freightliner M2 106 that was available with four-wheel drive. Freightliner is manufactured by Daimler. Daimler's website[2] describes its trucks this way: "Trucks that mean business," and "Trucks engineered to be efficient and reliable with excellent fuel economy, Freightliner trucks are a smart investment."[3]

8.      Johnson also wanted the Truck to be comfortable and well equipped for his daily use and for the family annual vacation to Jackson Hole, Wyoming. Johnson's research led him to

---

[1] A two-wheel drive car cannot make the grade without a running start.
[2] This reference is to the current website (https://freightliner.com/). However, Johnson recollects the same message conveyed when he researched the purchase of the Truck.
[3] See www.freightliner.com.

a Freightliner truck customizer called "Sportchassis." Sportchassis customizes the cab and adds accessories behind the cab. Johnson was willing to pay a price as steep as his road for a comfortable reliable truck capable of getting up that road without spinning its wheels while hauling a heavy load.

9. After his years of research, Johnson ordered a 2018 Freightliner M2 106 Sportchassis (the "Truck") with four-wheel drive from Sportchassis/Featherlite Trailers of Texas, LLC[4] ("SFT") on 17 January 2017. Johnson took delivery on 29 November 2017[5] paying $253,394.64. Johnson understands the transfer case[6] was sourced by Daimler from Meritor. The cab and rear area were customized by Sportschassis, LLC ("Sportchassis").

10. Johnson's home construction plans were delayed and none of his equipment required maintenance to be provided at a repair facility. As a result, the Truck was only used as a daily driver and was never put to work. On one occasion the Truck was used to tow an empty 16-foot enclosed trailer with the bumper hitch—the gooseneck hitch was never used. Despite that the Truck was only used as a daily driver for Johnson and for a single vacation in Jackson Hole, it suffered two catastrophic failures, stranding Johnson.

11. On 22 March 2018, and with only 9,979 miles on the Truck, Johnson was traveling north on Hwy 163 with his wife following behind. As Johnson approached Ozona, Texas, the Truck began making a loud squealing noise from what appeared to be the engine compartment. Johnson called SFT and was referred to Lonestar Truck Group ("Lonestar"). The Truck was towed at Johnson's expense to Lonestar's dealership in San Angelo, Texas, the nearest Freightliner

---

[4] The dealership is located in Conroe, Texas.
[5] The Truck was delivered to Mr. Johnson at the Archer Hotel located in the Domain, Austin, Texas.
[6] The transfer case is the part of the drivetrain of a four-wheel drive vehicle that transfers power from the transmission to the front and rear axles through driveshafts.

3

dealership. Johnson's ranch is about an hour from where the Truck broke down.

12. Lonestar made repairs and returned the Truck to Johnson on 26 April 2018, over one month later. Johnson asked for an explanation of the failure, but Lonestar told Johnson that Meritor would not provide any information. Johnson was also told the powertrain and driveline were checked and all was in order. Johnson was further told the transfer case required regular maintenance every ten thousand miles which he had performed thereafter by Lonestar.

13. On 6 August 2019, with 32,281 miles, Johnson and his wife were pulling the empty 16-foot enclosed trailer westbound on IH-10, five miles outside of Ozona, Texas, when they heard a noise similar to a tire blowing out followed by smoke coming from the Truck. They pulled over to the side of the highway.

14. Johnson looked under the Truck and found a substantial amount of oil leaking from underneath. The Truck was towed at Johnson's expense (again) to Lonestar. The Johnson's ranch hand had to come pick Johnson and his wife up and tow the trailer back to the ranch, about an hour and a half away. The Truck was returned to Johnson on 17 September 2019, after Lonestar again kept it for over one month. And again, Johnson was told the powertrain and driveline were checked and all was in order.

15. Regarding the second repair, Lonestar told Johnson it complied not only with Daimler's repair procedures, but Meritor's specific requirements and procedures for diagnosing the transfer case which was ultimately replaced per Meritor's directions. This time Johnson was told the failure was reportedly caused by overheating due to a failed oil pump and the excessive heat caused a speed sensor to melt which resulted in the oil leak. Johnson returned the Truck to his ranch where it was parked and never driven again until it was sold.

16. Lonestar is the assumed name of Lonestar Freightliner Group, LLC. A true copy of

the Texas Secretary of State's record is attached hereto for all purposes as **Exhibit A**[7]. Lonestar operates several authorized Freightliner dealerships in accordance with its Freightliner Trucks Dealer Sales and Service Agreement with Daimler, including the dealership in San Angelo where the Truck was serviced. A true copy of the agreement between Lonestar and Daimler is attached hereto for all purposes as **Exhibit B**[8]. Daimler admits that it paid for the repairs made to the Truck by Lonestar under warranty in a letter dated 28 October 2019. A true and correct copy of the letter is attached hereto for all purposes as **Exhibit C**[9]. The warranty repairs made by Lonestar were made as authorized representative and on behalf of Daimler. The warranty is issued by Daimler and only Daimler decides what repairs are covered. Lonestar is required to follow Daimler's repair procedures using only authorized replacement parts made available to Lonestar by Daimler. All of the information regarding the cause of failure and repair are provided by Daimler and Daimler's vendor—in this case, Meritor. Therefore, all of the representations made by Lonestar about the repairs are directly attributable to Daimler. Lonestar's representations about the repairs were Daimler's representations. Further, the representations were reaffirmed by Daimler when its District Service Manager determined the Truck had been repaired correctly.

17. On 23 January 2020, the Truck was inspected by a Daimler District Service Manager, named David Kessler. Mr. Kessler determined there was nothing wrong with the Truck. This was the same bill of health told to Johnson after the first and second catastrophic failures leaving him and his wife stranded on a highway outside of Ozona, Texas. Fortunately for the Johnsons, the Truck, in allegedly good working order, did not strand them while on vacation in Jackson Hole, Wyoming, where there is limited to no cell service on roads they frequent. Johnson

---

[7] See Johnson 000096-0000113.
[8] See Johnson 000114-000121.
[9] See Johnson 000005.

proposed that Daimler either warranty the transfer case during Johnson's ownership or purchase the Truck from him after deducting for mileage. However, Daimler refused both offers and did not make a counteroffer.

18.     The transfer case failures are unacceptable. They are especially unreasonable for three reasons: (i) the failures occurred at a shockingly low 10,000 and 32,000 miles; (ii) the Truck had only been used as Johnson's daily driver, not a dedicated work truck;[10] and (iii) Johnson only engaged four-wheel drive when driving up a hill to his home to prevent wheel spin leaving ruts to be repaired. Each of the transfer should have been able to sustain far more than the light duty under which the Truck was operated. During the inspection, Mr. Kessler told Johnson the Truck was built to work. Unfortunately, the Truck was unable to manage passenger car duty, a far cry from a truck that mean business or is engineered to be efficient and reliable, making it a smart investment.

19.     The Truck was unreliable and therefore useless to Johnson. Moreover, it could have put Johnson and his family in a dangerous situation by stranding them with no way to reach help. Johnson had no confidence that if he set out in the Truck he would actually make it to his destination. Instead, he'd be forced to accept the high probability that the transfer case would fail again. After each failure Lonestar, Daimler's authorized representative, assured Johnson the driveline and transfer case were properly installed and in good working order. Daimler's representative told Johnson the very same thing. Despite these representations, the transfer cases did in fact fail. It was not reasonable for Johnson to assume the transfer case wouldn't fail again. If Johnson's "luck" continued, he'd have to be towed to the nearest Freightliner dealer, have his ranch hand abandon his work to retrieve Johnson (and possibly other family members) with yet another day lost, as well as lost use of the Truck for another month, and be left with a hefty towing

---

[10] Mr. Johnson is not required to maintain a commercial driver's license.

and repair bill.

20.     Because the Truck was not reliable, Johnson was forced to look into having the crushed rock for his foundation delivered to the job site when work resumed. However, the only rock hauler in the entire area does not have the capability of navigating the hill and refused delivery beyond Johnson's gate at the highway. As a result, Johnson is having to use rock from his property and crushing it using his time and equipment. The cost of this process is approximately four times the cost of purchasing the rock and hauling it up the hill with the Truck.

21.     The warranty expired on 29 November 2019. Each of the repairs took a month to complete and cost approximately $20,000. The first failure occurred after less than 10,000 miles, and the second 20,000 miles later, totaling $40,000 and over two months of lost use. It is unreasonable for Johnson to face the likelihood of incurring repeated exorbitant costs of repair and downtime.[11] There is something clearly defective with the drivetrain of the Truck which Daimler and Meritor have chosen to dump on Johnson. Daimler's refusal to extend the warranty on the transfer case or purchase the truck back from Johnson forced him to dispose of the Truck by other means. After six months of non-use, Johnson agreed to sell the Truck for $155,000. Johnson received $130,000 after sales commissions were deducted. Johnson diligently investigated prices for similar vehicles before agreeing to the sale.

### IV.    CAUSES OF ACTION

**A.      Breach of the DTPA (Daimler and Meritor)**

22.     Johnson is a consumer under the DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT ("DTPA") because he is an individual who sought and acquired goods and

---

[11] In addition to loss of use of the Truck, work on Johnson's residence would cease causing additional damages as a result of the delay in construction.

services by purchase. Daimler and Meritor are corporations that can be sued under the DTPA.

23. Daimler and Meritor engaged in false, misleading, or deceptive acts or practices that Johnson relied on to his detriment. Specifically, Daimler and Meritor violated Sections 17.46(b)(5), (24), and 17.50. The Truck was unreliable because the transfer cases provided by Meritor are defective.[12]

24. Daimler and Meritor violated the DTPA when each engaged in an unconscionable action or course of action that, to Johnson's detriment, took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Daimler replaced a defective transfer case with another defective transfer case. To Johnson's knowledge and information, the replacement transfer case which burned up was the same make and model as the first one that failed without any changes designed to correct the defect.

25. Johnson gave Daimler and Meritor notice as required by TEX. BUS. & COM. CODE Section 17.505(a). A true and correct copy of the notice is attached hereto for all purposes as **Exhibit D**.[13] Daimler responded to the notice declining any liability. A true and correct copy of Daimler's response is attached hereto for all purposes as **Exhibit C**. Meritor did not respond to the notice.

26. Daimler and Meritor's wrongful conduct was a producing cause of Johnson's injury, which resulted in substantial and continuing damages. Johnson seeks liquidated damages in an amount within the jurisdictional limits of this Court.

27. <u>Attorney's fees</u>. Johnson is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under TEX. BUS. & COM. CODE, Section 17.50(d).

---

[12] Discovery is needed to determine the extent of failures in the type of transfer case installed in the Truck.
[13] See Johnson 000001-000004.

B.   **Breach of Implied Warranty of Fitness (Daimler)**

28.   Daimler sold the Truck to Johnson through an authorized dealer.

29.   Daimler knew that Johnson was buying the Truck for the purpose of driving the vehicle in two-wheel and four-wheel drive and that Johnson was relying on Daimler's skill and judgment to provide a truck fit for that purpose. Johnson paid a considerably higher price and waited a longer period of time for delivery of the Truck with four-wheel drive.

30.   Johnson actually relied on Daimler's skill and judgment in selecting the Truck. Daimler's reputation and the Truck's advertised specifications indicated the Truck was the best truck for Johnson, which also came at the highest price.

31.   The Truck was unfit for its purpose, which is a breach of the implied warranty of fitness for a particular purpose. The purpose was to be able to drive the Truck and haul loads in both two and four-wheel drive which is facilitated by the transfer case. However, the transfer case supplied with the Truck when delivered to Johnson as well as a replacement transfer case installed by an authorized Freightliner dealer failed catastrophically stranding Johnson. Further, the Truck was unfit for any purpose. The Truck was incapable of normal, unloaded, or two-wheel drive use, much less loaded in two-wheel or four-wheel drive.

32.   Johnson notified Daimler of the breach of the warranty of fitness for a particular purpose.[14]

33.   Daimler's breach of warranty directly and proximately caused injury to Johnson, which resulted in damages within the jurisdictional limits of this Court.

34.   Johnson seeks judgment for the foregoing damages, plus attorney's fees, and costs.

C.   **Breach of Implied Warranty of Merchantability (Daimler and Meritor)**

---

[14] See **Exhibit D**.

35. Daimler and Meritor, merchants of Trucks and transfer cases respectively, sold the Truck with the transfer case to Johnson. The Truck and transfer case were unmerchantable when Daimler and Meritor tendered them to Johnson because (as described in the preceding paragraphs) catastrophic failures of the original equipment and replacement transfer cases occurred stranding Johnson and rendering the Truck undrivable. This constitutes a breach of the implied warranty of merchantability.

36. Johnson notified Daimler and Meritor of the breach of the warranty of fitness for a particular purpose.[15]

37. Daimler's and Meritor's breach of warranty directly and proximately caused injury to Johnson, which resulted in damages within the jurisdictional limits of this Court.

38. As a further and proximate result of Defendants' breach of warranty, Johnson sustained incidental and consequential damages. Specifically, Johnson was forced to have the Truck towed at his expense to Lonestar for each of the two repairs.

39. Johnson seeks judgment for the foregoing damages, plus attorney's fees, and costs.

## V.   PRAYER

40. For the reasons stated above, Johnson seeks the following:

   a. Actual damages.

   b. Consequential damages.

   c. Loss of use damages.

   d. Economic damages.

   e. Prejudgment and post-judgment interest.

   f. Court costs.

---

[15] See **Exhibit D**.

g. Attorney's fees.

h. All other relief to which Johnson is entitled.

                Respectfully submitted,

                WALLER LANSDEN DORTCH & DAVIS, LLP
                100 Congress Avenue, Suite 1800
                Austin, Texas 78701
                Telephone: (512) 685-6400
                Telecopier: (512) 685-6417

By:   */s/ Rick Harrison*
       Rick Harrison
       Texas State Bar No. 09120000
       rick.harrison@wallerlaw.com
       Victoria Harrison
       Texas State Bar No. 24109976
       Tori.harrison@wallerlaw.com

       ATTORNEYS FOR PLAINTIFF

By:   RICHARD E. GREENBLUM
       State Bar No. 08390425
       richard@richardgreenblum.com
       5114 Balcones Woods Dr, Ste 307-342
       Austin, TX 78759
       (512) 322-3262
       Fax (512) 322-3252

       ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

       I certify by my signature above that a true and correct copy of the above and foregoing has been served on the following on 25th day of August, 2020 by the Court's ECF filing system, email and/or U.S. Mail.

Ryan C. Bueche
rbueche@germer-austin.com
GERMER BEAMAN & BROWN, PLLC
301 Congress Ave, Ste 1700
Austin, TX 78701
*Counsel for Defendant Daimler Trucks North America, LLC*

Edward M. Slaughter
eslaughter@grsm.com
Hollingsworth Barret Marshall, Jr.
bmarshall@grsm.com
Kristina A. Pierre-Louis
kpierrelouis@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
2200 Ross Ave, Ste. 3700
Dallas, TX 75201
*Counsel for Defendant Meritor Aftermarket USA, LLC*

                                              */s/ Rick Harrison*
                                              Rick Harrison